# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **BARKAN WIRELESS IP HOLDINGS, L.P.,** | |
| **Plaintiff,** | **Civil Action No. 2:19-cv-00336-JRG** |
| **v.** | |
| **SPRINT COMMUNICATIONS CO., L.P.,** | **JURY TRIAL DEMANDED** |
| **SPRINT SOLUTIONS, INC., SPRINT** | |
| **SPECTRUM L.P., and COMMSCOPE** | |
| **TECHNOLOGIES, LLC,** | |
| **Defendants.** | |

## BARKAN'S OBJECTIONS TO THE MAGISTRATE
## <u>JUDGE'S CLAIM CONSTRUCTION ORDER</u>

Pursuant to Rule 72(a), Plaintiff Barkan Wireless IP Holdings, L.P. ("Barkan") objects to certain claim constructions from the Magistrate Judge's Claim Construction Order. Dkt. No. 144. On each of these terms, Barkan incorporates by reference its claim construction briefing (Dkt. Nos. 114 and 131) and *Markman* hearing arguments (Dkt. No. 143).

1.    <u>COORDINATION CENTER</u>

The Court construed "coordination center" as a "center that does not participate in the actual call routing but that provides information required for making a call <u>and that determines and disseminates a price policy</u>." Dkt. 144 at 29. Barkan objects only to the underlined portion of this construction that requires the center to "determine[] and disseminate[] a price policy."

"Coordination center" appears in independent claim 1 of the '284 Patent and makes no mention of a price policy. By incorporating a pricing requirement into the definition of "coordination center," the Court improperly imported a limitation into the claims. *See EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338 (Fed. Cir. 2014) (improper to "to read limitations from a preferred embodiment . . . even if it is the only embodiment"). While the specification states that the coordination center ***may*** perform a variety of functions—including relating to billing and pricing policies—it is only ***required*** to perform one: "[T]he new center 3 just provides the information required for making a call." Ex. A ('284 Patent) at 6:52-54. The specification makes clear that implementing a price policy is a potential responsibility of the coordination center, not a mandatory one. *See id*. at 7:34-38 (providing other duties of coordination center); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004) ("[T]he quoted passage does not suggest that a pressure jacket is an essential component of the invention, nor is there any language in that passage, or elsewhere in the specification, that disclaims the use of the invention in the absence of a pressure jacket.").

That the coordination center need not determine or disseminate a "pricing policy" is also apparent from the claims. The concept of a pricing policy is introduced not in the 284 Patent's independent claims, but in its ***dependent*** claims—like claim 4—which speak of a "consideration related policy database" that performs the function of tracking "consideration" (*i.e.*, money), rather

1

than "coordinating." Claim 4 requires that this consideration-related policy database provide information to the controller in exactly the same fashion (and for the same purpose) as the coordination center in claim 1. Reading a pricing-policy limitation into claim 1 therefore violates the doctrine of claim differentiation. *See, e.g.*, *Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 14 (Fed. Cir. 2020) ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." (citation omitted)). The Court's reason for concluding otherwise was that "Plaintiff's proposed construction for 'consideration-related policy database' refers not to determining and disseminating a price policy but rather to '*storing* information related to billing or pricing policies.'" Dkt. 144 at 26 (emphasis in original). Since storing billing data is a necessary predicate to disseminating it, that makes no difference for purposes of the claim-differentiation analysis.

The distinction between the coordination center (which appears in the independent claims) and the consideration-related policy database (which appears only in dependent claims) is further highlighted by the prosecution history. During prosecution, then-pending claim 40 (which became '284 claim 1) required a consideration-related policy database. Ex. H at -325. The patentee, however, *amended* that claim to remove the consideration-related policy database and replace it with a "coordination center." *Id*. In conjunction with that amendment, the patentee added a new dependent claim (claim 43, which became '284 claim 4) requiring a consideration-related policy database. In other words, the patentee removed the pricing requirement from the independent claim and placed it in the dependent claim. Thus, the Court's construction would not only add a limitation that is not in the claim language, but also undo amendments made by the patentee.

2.    CONSIDERATION-RELATED POLICY DATABASE

Barkan objects to the Court's construction of this term (in claims 4, 11, and 19 of the '284 Patent) to the extent it requires the consideration-related policy database to be "on the Internet." The referenced database simply stores information regarding billing or pricing, which may include "price setting" (Ex. A at 6:21-22), implementing a "price policy" (*id*. at 7:36, 7:56, 10:38-39), or a "billing policy." (*id*. at 10:27-31, 15:24-29). Nothing in the claim language requires the database

to be "on the Internet," and it is improper to import that limitation.

The claim language makes clear that the consideration-related policy database need not be located on the Internet. The term first appears in dependent claim 4 of the '284 Patent, which depends from claim 1. Claim 4 contains no requirement that the consideration-related policy database be on the Internet. In fact, later claims suggest the opposite. Claims 11 and 19 state only that the database need be "connected" to the packet-based data network (not "on" it), and never require that the network to which the database is "connected" be the "public Internet." Indeed, both claims require the presence of "a third interface" to facilitate that connection. That Claim 4 contains neither limitation confirms that the database need neither be (a) connected to the Internet nor (b) contain a third interface to facilitate the connection.

The Court's construction of this term turned on purportedly limiting statements from the file history referencing the database being "on the Internet." Dkt. 144 at 30 (citing analysis from the *Samsung* case). As Barkan explained, those statements are not a prosecution disclaimer because they referenced claim language that was later eliminated. Specifically, all three of the then-pending claims contained *additional* requirements that the database be connected to or associated with a packet-based data network (such as the Internet). *See* Ex. H at -295. But that requirement was later removed. *See id.* at -325-26 (claims 40 and 43, which became claims 1 and 4). There is no disclaimer because the limiting statements addressed claim language that was removed from the ultimate issued claim. *See MIT v. Shire Pharms., Inc.*, 839 F.3d 1111, 1121-22 (Fed. Cir. 2016) (no prosecution disclaimer when the statements addressed language not present in the issued claims). It was thus improper for the Court to base its construction on any purported disclaimer.

**3.     A CONTROLLER ADAPTED TO REGULATE DATA FLOW**

The Court construed "a controller adapted to regulate data flow" to have its plain meaning. Dkt. 144 at 35. The proper construction, however, is "a controller that controls the rate or quantity of data flowing through the gateway." The specification discloses a call controller that controls or supervises the flow of data between a radio frequency link and a packet-based data network. Ex. A at 10:56-63, Fig. 2. The call controller regulates data flow by controlling or varying the rate or

3

quantity of data that flows through the gateway. For example, the gateway controller may restrict the rate or quantity of data through the gateway if the coordination center indicates that a mobile device user or a gateway is not authorized to transmit data through the gateway and/or to the packet based data network. *See, e.g.*, Ex. A at 9:26-30 (coordination center checks whether a caller is authorized to make a call); Ex. H at -037 (original claim 19). This is consistent with the prosecution history, which characterized the claim language as "regulating data flow through a gateway." Ex. H at -333, -335. It is also consistent with Barkan's cited extrinsic evidence, which shows that "regulate" requires the ability to control or adjust data flow. *See* Ex. J at -035; Ex. I at -040.

### 4.    TAMPER-FREE UNIT/HARDWARE

Barkan objects to construing "tamper-free unit" or "tamper-free hardware" as a form of "hardware [or unit] that includes means to destroy its contents or delete information stored therein, if someone tries to tamper with it." Dkt. 144 at 39–40. The claim does not mention means to destroy content or delete information, and the Court impermissibly imported a ***preferred embodiment*** into the claim term itself.

The specification discloses that billing or pricing units in Barkan's add-on base stations may function as a "tamper-free" "black box." Ex. C at 10:47-49. One example is a device that can destroy its own contents when tampered with. *See id.* ("This black box ***can*** be tamper-free, ***including*** means to destroy its contents or delete the information therein, if someone tries to tamper with it." (emphases added)). Another involves encrypting the billing or pricing data. *See id.* at 6:28–31 ("explaining that "information regarding prices" can be "disseminated as digital documents ***encrypted so as to prevent tampering with***"). Neither the specification nor the claims implies—much less states—that either embodiment excludes other means of making a device tamper-free (*e.g.*, a tamper-free seal, anti-tamper alarm, etc.). Indeed, the Court's construction would ***exclude*** the embodiment where encryption serves as a means to prevent tampering, which is improper. *See, e.g.*, *Wenger Mfg., Inc. v. Coating Machinery Sys. Inc.*, 239 F.3d 1225, 1237 (Fed. Cir. 2001) ("Although the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims

when the claim language is broader than such embodiments." (citation omitted)).

If the patentee had intended to limit the tamper-free term solely to a self-destruct mechanism, the specification could have said so. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (patentee may act as own lexicographer when different definition of term is "explicit"). In any event, the patentee cannot have intended to so limit the claims and specification, as it provided a second example of tamper-free functionality—using "encrypt[ion]" to prevent tampering. *See* Ex. C at 6:28–31.

**5.   ADAPTED TO**

Finally, Barkan objects to the Court's construction of the term "adapted to"—which appears throughout the claims of the '284, '312 and '638 patents—as "configured to." "[N]o construction is necessary" for the term "adapted to," because "'adapted to' is not ambiguous," *Profectus Tech. LLC v. Huawei Techs. Co. Ltd.*, 2014 WL 1575719, at *8 (E.D. Tex. Apr. 17, 2014). Even if construed, "adapted to" can encompass meanings of being "capable of" or "suitable for" the claimed operation. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012). That is particularly so here because the claim language using "adapted to" is paralleled by specification language describing what the claimed apparatus is "capable" of performing. *See, e.g.*, '284 Patent, at 8:50-52, 11:31-34, 11:35-36.

DATED: November 9, 2020                     Respectfully Submitted,

/s/ Blaine Larson
Max L. Tribble, Jr. – Lead Counsel
Texas State Bar No. 20213950
Justin Nelson
Texas State Bar No. 24034766
**SUSMAN GODFREY, L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
jnelson@susmangodfrey.com

Matthew R. Berry
Washington State Bar No. 37364
Alexander W. Aiken
Washington State Bar No. 55988
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave., Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
aaiken@susmangodfrey.com

William D. O'Connell
New York State Bar No. 5491014
**SUSMAN GODFREY, L.L.P.**
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
boconnell@susmangodfrey.com

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth DeRieux
Texas State Bar No. 05770585
**CAPSHAW DERIEUX LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
ccapshaw@capshawlaw.com

ederieux@capshawlaw.com

Michael F. Heim
Texas State Bar No. 09380923
Robert A. Bullwinkel
Texas State Bar No. 24064327
Blaine A. Larson
Texas State Bar No. 24083360
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby St., Suite 2100
Houston, TX 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com
abullwinkel@hpcllp.com
blarson@hpcllp.com

T. John Ward, Jr.
Texas State Bar No. 00794818
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea L. Fair
Texas State Bar No.24078488
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
jw@wsfirm.com
claire@wsfirm.com

*Attorneys for Plaintiff Barkan Wireless IP*
*Holdings, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically incompliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).

*/s/ Blaine Larson*
Blaine Larson