**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BARKAN WIRELESS IP HOLDINGS L.P., | |
| *Plaintiff,* | CIVIL ACTION NO. 2:19-CV-336-JRG |
| v. | |
| SPRINT COMMUNICATIONS CO. L.P., SPRINT SOLUTIONS INC., and SPRINT SPECTRUM L.P., | JURY DEMANDED |
| *Defendants*. | |

**SPRINT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**
**FOR CELLULAR/RELAY BACKHAUL ACCUSED PRODUCTS**

**TABLE OF CONTENTS**

I.       INTRODUCTION..................................................................................................... 2

II.      STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT.................... 3

III.     STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")......................... 3

IV.      LEGAL STANDARD .............................................................................................. 6

V.       ARGUMENT ........................................................................................................... 6

         A.      The Accused Magic Box Products Were Not Originally Capable of Using Internet
                 Backhaul. ...................................................................................................... 6

                 i.      '284 Patent ........................................................................................7

                 ii.     '312 Patent ........................................................................................8

                 iii.    '638 Patent ........................................................................................8

         B.      The Accused Products Are Not "Adapted to" Use Internet Backhaul—And
                 Therefore Do Not Infringe—Unless Specifically Configured To Do So By An
                 End-User. ...................................................................................................... 9

VI.      CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bai v. L & L Wings, Inc.*,
160 F.3d 1350 (Fed. Cir. 1998)...................................................................................6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................6

*Cummins-Allison Corp. v. Glory, Ltd.*,
No. 2:03-CV-358-TJW, 2005 WL 3408029 (E.D. Tex. Dec. 12, 2005) ...................6

*SIPCO v. Amazon.com, Inc., et al.*,
No. 2:08-CV-359, 2012 WL 5195942 (E.D. Tex. Oct. 19, 2012) ...........................10

*Solocron Media, LLC v. Verizon Commc'ns Inc.*,
No. 2:13-CV-1059-JRG-RSP, 2015 WL 1011310 (E.D. Tex. Mar. 5, 2015) .........9

*Toshiba Corp., v. Imation Corp.*,
681 F.3d 1358 (Fed. Cir. 2012)...................................................................................6

**Other Authorities**

Fed. R. Civ. P. 56.......................................................................................................6

████████████████████████████████

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
| --- | --- |
| Ex. 1 | U.S. Patent No. 8,014,284 ("'284 Patent") |
| Ex. 2 | U.S. Patent No. 8,559,312 ("'312 Patent") |
| Ex. 3 | U.S. Patent No. 9,392,638 ("'638 Patent") |
| Ex. 4 | Declaration of Kyle Allen ("Allen Decl.") |
| Ex. 5 | Deposition of Kyle Allen ("Allen Dep.") |
| Ex. 6 | Expert Report of Walter Bratic ("Bratic Op. Rpt.") |
| Ex. 7 | Rebuttal Expert Report of Dr. Edwin A. Hernandez-Mondragon Regarding Validity ("Hernandez Reb. Rpt.") |
| Ex. 8 | Expert Report of Dr. Edwin A. Hernandez-Mondragon Regarding Infringement ("Hernandez Infr. Rpt.") |

███████████████████

Plaintiff Barkan Wireless IP Holdings, L.P.'s ("Barkan") infringement allegations in this case are limited to Sprint femtocell products that use an Internet backhaul (as opposed to a cellular or "relay" backhaul).[1]

Barkan has no plausible basis to allege infringement by the accused Magic Box Gold or the Magic Box Gen 2a[2] femtocell products before those products were capable of using an Internet backhaul to communicate with the Sprint core network. Summary judgment of noninfringement for these products prior to the time they were capable of using an Internet backhaul should be granted.

Furthermore, even after the Magic Box Gold and Magic Box Gen 2a femtocell products were *capable* of using an Internet backhaul, many of the accused products were not configured to do so. All of the asserted claims require the accused devices be "adapted to" operate using an Internet backhaul. The Court construed the term "adapted to" to mean "configured to" and noted that the "Court hereby expressly relies upon its understanding...that 'adapted to' does not encompass mere capability." Dkt. 144 at 66. The default configuration for the Magic Box Gold and the Magic Box Gen 2a femtocell products is cellular backhaul. That is, they both use a cellular backhaul "out of the box" and must be specifically configured by the end-user to switch to an Internet backhaul. As such, summary judgment of noninfringement for the Magic Box Gold and Magic Box Gen 2a products that are not configured to use an Internet backhaul should be granted.

---

[1] A backhaul is the communication link between the femtocell device and the core network.
[2] Barkan's infringement allegations as to the Magic Box Gen 2a product are the subject of Sprint's contemporaneously filed Motion to Strike Untimely Infringement Allegations.

## I.   INTRODUCTION

Barkan alleges infringement by Sprint of three patents.[3] Every asserted claim from the Asserted Patents requires a device—either a "gateway" or an "add-on base station"—that bridges two different networks (*e.g.*, a cellular network and a packet-based data network such as the Internet). The accused femtocell devices allegedly constitute this "gateway" or "base station" by providing a cellular connection to a mobile device and connecting to the Sprint core network via an Internet backhaul. Sprint does not contest that the accused Magic Box femtocells connect with mobile devices over a cellular connection. But prior to May 2019 and December 2019, respectively, the Magic Box Gold and Magic Box Gen 2a products *could not* be used with an Internet backhaul; they exclusively used a cellular backhaul (also referred to as "relay backhaul") and were not capable of connecting to the Sprint core network via an Internet backhaul. That is, the Magic Box femtocell products were non-infringing prior to May and December 2019, respectively, because they were not capable of bridging two different networks, as required by every asserted claim.[4]

Even after the Magic Box products became *capable* of connecting to the Sprint core network via an Internet backhaul in 2019, the default configuration was—and remains—a cellular backhaul. That is, if an end-user plugs the Magic Box device into a power source out of the box, the device will attempt to connect to Sprint's network via cellular backhaul. Since it was enabled in 2019, in order to connect using an Internet backhaul, an end-user must specifically configure the Magic Box device to utilize the Internet backhaul. Magic Box devices not set up by the end-

---

[3] The "Asserted Patents" are U.S. Patent Nos. 8,014,284 (the "'284 Patent"), 8,559,312 (the "'312 Patent"), and 9,392,638 (the "'638 Patent").

[4] While Sprint's instant motion for summary judgement of noninfringement is limited to specific features of the Magic Box products, Sprint does not waive any noninfringement arguments and specifically asserts that the Magic Box products do not infringe the Asserted Patents.

user to operate via Internet backhaul do not infringe the Asserted Patents because they are not "configured to" bridge two networks, as required by the asserted claims.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

1.     Whether Barkan has failed to establish infringement by Magic Box Gold and Magic Box Gen 2a prior to May 2019 and December 2019, respectively.

2.     Whether Barkan has failed to establish infringement by Magic Box Gold and Magic Box Gen 2a devices that are not specifically configured by end-users to use an Internet backhaul.

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

1.     All of the claims in the '284 Patent and '312 Patent are directed to a "gateway." *See generally* Exs. 1, 2.

2.     Independent claims 1 and 2 of the '284 Patent require a "transceiver adapted to establish a radio-frequency link with a mobile device" and "a controller adapted to regulate data flow between the mobile device and the [packet-based] data network." *See* Ex. 1, Claims 1-2.

3.     Independent claim 3 of the '284 Patent requires "establishing a data link between the mobile device and a radio-frequency transceiver" and "regulating data flow between the mobile device and the packet based data network." *See* Ex. 1, Claim 3.

4.     All three independent claims of the '312 Patent (claims 1, 4, and 8) require "a gateway to a packet-based data network." *See* Ex. 2, Claims 1, 4, and 8; *see also* Dkt. 144 at 55 (the preamble of claim 1 is limiting).

5.     All asserted claims from the '638 Patent require an "add-on base station" with a controller that is "adapted to...establish a radio-frequency link with a mobile device," on the one hand, and "adapted to...transmit [various data] to a server of a server system over the public Internet," on the other hand. *See* Ex. 3, Claims 1, 9, 17, and 27.

6.      The parties agree that the term "gateway" means "a network device that facilitates communication between two or more networks." Dkt. 144 at 9.

7.      The Court construed the term "adapted to" to mean "configured to," and noted that the "Court hereby expressly relies on its understanding...that 'adapted to' does not encompass mere capability." Dkt. 144 at 66.

8.      The Court construed the term "add-on base station" to mean "a base station that uses the pre-existing network infrastructure of one network to provide additional coverage for another network." Dkt. 144 at 22.

9.      The Magic Box Gold was not capable of using an Internet backhaul to connect to the Sprint network prior to May 2019. *See* Ex. 4 (Allen Decl.), ¶¶ 6-7; Ex. 5 (Allen Dep.) at 61:19-62-13; Ex. 6 (Bratic Op. Rpt.), ¶ 121.

10.     Until May of 2019, the Magic Box Gold was not capable of bridging a cellular network and Sprint's core network using an Internet backhaul, and instead could only use cellular connections both to link to mobile devices and as a backhaul to Sprint's core network. *See* Ex. 4 (Allen Decl.), ¶ 7; Ex. 5 (Allen Dep.) at 61:19-62:13; Ex. 6 (Bratic Op. Rpt.), ¶ 121.

11.     The Magic Box Gen 2a was not capable of using an Internet backhaul to connect to the Sprint network prior to December 2019. *See* Ex. 4 (Allen Decl.), ¶¶ 6, 8; Ex. 5 (Allen Dep.) at 63:21-65:11; Ex. 6 (Bratic Op. Rpt.), ¶ 119.

12.     Until December of 2019, the Magic Box Gen 2a was not capable of bridging a cellular network and Sprint's core network using an Internet backhaul, and instead could only use cellular connections both to link to mobile devices and as a backhaul to Sprint's core network. *See* Ex. 4 (Allen Decl.), ¶ 8; Ex. 5 (Allen Dep.) at 63:21-65:11; Ex. 6 (Bratic Op. Rpt.), ¶ 119.

13.     The default configuration for both Magic Box Gold and Magic Box Gen 2a is to use cellular backhaul to connect to Sprint's core network. *See* Ex. 4 (Allen Decl.), ¶ 9.

14.     In order to use an Internet backhaul, the end-user must specifically configure the Magic Box Gold or Magic Box Gen 2a to do so (after May and December 2019, respectively). *See* Ex. 4 (Allen Decl.), ¶ 10.

15.     Because independent claims 1 and 2 of the '284 Patent require "a controller adapted to regulate data flow between the mobile device and the [packet-based] data network," under the Court's construction of "adapted to," the accused products must be configured to regulate data flow (and not merely capable of doing so) between a mobile device and a packet-based data network (such as the Internet, as asserted by Barkan), among other requirements, in order to infringe. *See* Ex. 1, Claims 1-2; Dkt. 144 at 66.

16.     Because independent claim 3 of the '284 Patent requires "regulating data flow between the mobile device and the packet based data network," under the Court's construction of "adapted to," the accused products must actually regulate data flow between a mobile device and a packet-based data network (such as the Internet, as asserted by Barkan), among other requirements, in order to infringe. *See* Ex. 1, Claim 3; Dkt. 144 at 66.

17.     Because all three independent claims (1, 4, and 8) of the '312 Patent require "a connection regulator adapted to facilitate data flow between the mobile device and the packet-based data network," under the Court's construction of "adapted to" and "connection regulator adapted to facilitate data flow," the accused products must be configured to facilitate and regulate data flow (and not merely capable of doing so) between a mobile device and a packet-based data network (such as the Internet, as asserted by Barkan), among other requirements, in order to infringe. *See* Ex. 2, Claims 1, 4, and 8; Dkt. 144 at 32, 66.

18.     Because all four independent claims (1, 8, 17, and 27) of the '638 Patent require "a controller adapted to" "transmit recurrent updates regarding current operating parameters to a server of a server system via the public Internet," under the Court's construction of "adapted to," the accused products must be configured to transmit updates over the public Internet (and not merely capable of doing so), among other requirements, in order to infringe. *See* Ex. 3, Claims 1, 8, 17, and 27; Dkt. 144 at 66.

## IV.     LEGAL STANDARD

"Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Toshiba Corp., v. Imation Corp.*, 681 F.3d 1358, 1361 (Fed. Cir. 2012); Fed. R. Civ. P. 56. Summary judgment is warranted if the non-movant bears the burden of proof yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a claim limitation is missing in an accused device, the Court must grant summary judgment of noninfringement. *See Cummins-Allison Corp. v. Glory, Ltd.*, No. 2:03-CV-358-TJW, 2005 WL 3408029, at *2 (E.D. Tex. Dec. 12, 2005) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353-54 (Fed. Cir. 1998)).

## V.     ARGUMENT

### A.     The Accused Magic Box Products Were Not Originally Capable of Using Internet Backhaul.

There can be no dispute that the Magic Box Gold and Magic Box Gen 2a did not, and could not, infringe the Asserted Patents before they were capable of connecting to Sprint's core network using an Internet backhaul. Indeed, Barkan's expert witnesses, Dr. Hernandez-Mondragon and Mr. Bratic, have indicated that the Asserted Patents require a device that bridges mobile device communications over a cellular link with an Internet backhaul. *See* Dkt. 139-1 at 11 (agreed

████████████████████████████████████████

construction for the term "gateway"); Ex. 7 (Hernandez Reb. Rpt.), ¶ 58 ████████████

████████████████████████████████████████

██████████████████; *see also* Ex. 8 (Hernandez Infr. Rpt.), ¶¶ 88-120 (████████████

████████████████████████████████████████),

¶¶ 242, 256, 280 (same for '312 Patent), ¶¶ 453-461, 529-530, 551-552, and 575-576 (same for

'638 Patent); Ex. 6 (Bratic Op. Rpt.), ¶¶ 119, 121. To the extent Barkan argues that the Magic Box

products were "adapted to" satisfy the requirement that the "gateway" or "add-on base station"

connect two or more networks prior to May and December 2019, respectively, because the product

had the requisite hardware and/or software to do so, Barkan is mistaken. Specifically, while the

requisite hardware and software are necessary to use an Internet backhaul, they are not sufficient.

Simply put, the accused Magic Box devices were not even capable of using an Internet backhaul—

let alone "adapted to" do so—until both (i) the devices had all requisite hardware and software and

(ii) they were actually capable of communicating with Sprint's network over an Internet backhaul.

These two conditions were not met until May and December of 2019, respectively. SUMF, ¶¶ 9-

12.

### i.      '284 Patent

The independent claims of the '284 Patent are claims 1-3. *See* SUMF, ¶¶ 2-3. Claims 1 and

2 each require a "transceiver adapted to establish a radio-frequency link with a mobile device," on

the one hand, and "a controller adapted to regulate data flow between the mobile device and the

[packet-based] data network." SUMF, ¶ 2. The Court construed the term "adapted to" to mean

"configured to," and noted that the "Court hereby expressly relies on its understanding...that

'adapted to' does not encompass mere capability." Dkt. 144 at 66. Claim 3 requires "establishing

a data link between the mobile device and a radio-frequency transceiver," on the one hand, and

"regulating data flow between the mobile device and the packet based data network," on the other.

SUMF, ¶ 3. Because all independent claims require a device that bridges two networks, all claims of the '284 Patent have this requirement. *See* SUMF, ¶¶ 1-3.

Prior to May 2019 and December 2019, the Magic Box Gold and Magic Box Gen 2a were not capable of using an Internet backhaul to connect to Sprint's network, and therefore could not bridge two different networks. SUMF, ¶¶ 9-12. Barkan has not, and cannot, present evidence that these products infringed the asserted claims of the '284 Patent prior to May 2019 and December 2019, respectively. *See* SUMF, ¶¶ 9-12, 15-16. Summary judgement of noninfringement on this point should therefore be granted.

### ii.   '312 Patent

Every independent claim of the '312 Patent requires a "gateway to a packet-based data network." SUMF, ¶ 4. The parties agree that the term "gateway" means "a network device that facilitates communication between two or more networks." SUMF, ¶ 6. Because all independent claims require a device that bridges two networks, all claims of the '312 Patent have this requirement. *See* SUMF, ¶ 4.

For the same reason as the '284 Patent, Barkan has not, and cannot, present evidence that prior to May 2019 and December 2019 respectively, the Magic Box Gold and Magic Box Gen 2a products infringed the asserted claims of the '312 Patent. SUMF, ¶¶ 9-12, 17. Summary judgement of noninfringement on this point is therefore proper.

### iii.   '638 Patent

Every independent claim of the '638 Patent requires an "add-on base station" with a controller that is "adapted to...establish a radio-frequency link with a mobile device," on the one hand, and "transmit [various data] to a server of a server system over the public Internet," on the other hand. SUMF, ¶ 5. The Court construed the term "add-on base station" to mean "a base station that uses the pre-existing network infrastructure of one network to provide additional coverage for

another network," and the term "adapted to" to mean "configured to." SUMF, ¶ 7-8. Because all independent claims require a device that bridges two networks, all claims of the '638 Patent have this requirement. *See* SUMF, ¶ 5.

For the same reason as the '284 Patent, Barkan has not, and cannot, present evidence that prior to May 2019 and December 2019 respectively, the Magic Box Gold and Magic Box Gen 2a products infringed the asserted claims of the '638 Patent. SUMF, ¶¶ 9-12, 18. Summary judgement of noninfringement therefore should be granted.

### B.     The Accused Products Are Not "Adapted to" Use Internet Backhaul—And Therefore Do Not Infringe—Unless Specifically Configured To Do So By An End-User.

The default configuration for both the Magic Box Gold and Magic Box Gen 2a is to use a cellular backhaul. SUMF, ¶ 13. In order to use an Internet backhaul, an end-user must manually connect the device to an Internet connection (either via an Ethernet cable to an Internet router or by connecting the femtocell to a WiFi network) and then manually switch the backhaul configuration of the device to Internet. SUMF, ¶ 14. Every independent claim of the '284 Patent, '312 Patent, and '638 Patent requires either (1) that a device be "adapted to" communicate with a packet-based network or (2) actual communication with a packet-based network.[5] *See* SUMF, ¶¶ 2-5, 15-18.  As a result, the Magic Box Gold and Magic Box Gen 2a, even once capable of using an Internet backhaul, were not "configured to" use an Internet backhaul unless and until configured by the end-user. *See* Dkt. 144 at 66 ("The Court therefore hereby construes 'adapted to' to mean 'configured to,' and in adopting this construction the Court hereby expressly relies on its understanding, as set forth above, that 'adapted to' does not encompass mere capability."); *see also Solocron Media, LLC v. Verizon Commc'ns Inc.*, No. 2:13-CV-1059-JRG-RSP, 2015 WL

---

[5] Claim 3 of the '284 Patent claims a method requiring actual performance of the step "regulating data flow between the mobile device and the packet based data network." SUMF, ¶ 3.

1011310, at *12 (E.D. Tex. Mar. 5, 2015) ("The Court accordingly hereby construes 'configured to' to have its plain meaning, 'which the Court understands to require not merely being capable of being configured but rather being actually configured.'") (citing *SIPCO v. Amazon.com, Inc., et al.*, No. 2:08-CV-359, 2012 WL 5195942, at *56 (E.D. Tex. Oct. 19, 2012)).

## VI.   CONCLUSION

For the foregoing reasons, Sprint respectfully requests summary judgment of noninfringement for the Magic Box Gold prior to May 2019 and for the Magic Box Gen 2a[6] prior to December 2019, and summary judgment of noninfringement for the Magic Box Gold and Magic Box Gen 2a, for those products that were not configured by an end-user to connect to Sprint's network using an Internet backhaul.

---

[6] Subject to Sprint's contemporaneously filed Motion to Strike Untimely Infringement Allegations

Dated:  December 4, 2020

Respectfully submitted,

*/s/ Jason W. Cook*
David E. Finkelson (*pro hac vice*)
Lead Attorney
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, VA 23219-3916
Tel:  (804) 775-1000
Fax:  (804) 698-2016
dfinkelson@mcguirewoods.com

Jason W. Cook
Texas State Bar No. 24028537
Matthew W. Cornelia
Texas State Bar No. 24097534
**MCGUIREWOODS LLP**
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel:  (214) 932-6400
Fax:  (214) 932-6499
jcook@mcguirewoods.com
mcornelia@mcguirewoods.com

Meghan M. Rachford (*pro hac vice*)
**MCGUIREWOODS LLP**
Promenade
1230 Peachtree Street, N.E., Suite 2100
Atlanta, GA 30309
Tel:  (404) 443-5500
Fax:  (404) 443-5599
mrachford@mcguirewoods.com

Robert W. Weber
Texas State Bar No. 21044800
**SMITH WEBER, L.L.P.**
5505 Plaza Drive
PO Box 6167
Texarkana, Texas 75503
Tel: (903) 223-5656
Fax: (903) 223-5652
bweber@smithweber.com

*Counsel for Defendants Sprint Communications*
*Company L.P., Sprint Solutions, Inc., and Sprint*
*Spectrum L.P.*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL
## PURSUANT TO LOCAL RULE CV-5(a)(7)

I hereby certify that Sprint is authorized to file the foregoing document and related

exhibits under seal by the Court pursuant to Paragraph 16 of the Protective Order entered by the

Court on May 21, 2020, as they contain DESIGNATED MATERIAL.

 */s/ Jason W. Cook*
Jason W. Cook

## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5, the undersigned certifies that the foregoing document was

served upon counsel of record for Plaintiff via e-mail on December 4, 2020.

 */s/ Jason W. Cook*
Jason W. Cook