**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BARKAN WIRELESS IP HOLDINGS L.P., | |
| *Plaintiff,* | CIVIL ACTION NO. 2:19-CV-336-JRG |
| v. | |
| SPRINT COMMUNICATIONS CO. L.P., SPRINT SOLUTIONS INC., and SPRINT SPECTRUM L.P., | JURY DEMANDED |
| *Defendants.* | |

**SPRINT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT
OF "COORDINATION CENTER" AND "TAMPER-FREE" CLAIMS**

███████████████████████████████

## TABLE OF CONTENTS

I.   STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ........................... 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF") ............................. 1

III. LEGAL STANDARD ........................................................................................................ 7

IV.  ARGUMENT .................................................................................................................... 7

    A.   "Coordination Center" Claims ................................................................................ 7

        i.   Barkan's Alleged "Coordination Center" Is Not a Contiguous "Center"....9

        ii.  The Alleged "Coordination Center" Participates in Call Routing .............14

        iii. The Alleged "Coordination Center" Does Not Determine and Disseminate a Price Policy ............................................................................................16

        iv.  Nothing Barkan Identifies as a "Price Policy" is Sent to the Accused Products ...................................................................................................19

    B.   "Tamper-Free" Claims ........................................................................................... 20

V.   CONCLUSION ............................................................................................................... 21

███████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bai v. L & L Wings, Inc.*,
160 F.3d 1350 (Fed. Cir. 1998)................................................................................20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................................7

*Cummins-Allison Corp. v. Glory, Ltd.*,
No. 2:03-CV-358-TJW, 2005 WL 3408029 (E.D. Tex. Dec. 12, 2005) ..................7, 8, 18, 20

*Seal-Flex, Inc. v. Athletic Track & Court Const.*,
172 F.3d 836 Fed. Cir. 1999).................................................................................21

*Toshiba Corp., v. Imation Corp.*,
681 F.3d 1358 (Fed. Cir. 2012).................................................................................7

*Traxcell Techs., LLC v. Nokia Sols. & Ntwks OY*,
No. 2:17-CV-44-RWS-RSP, 2019 WL 6723844 (E.D. Tex. Dec. 11, 2019)........................21

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co*,
520 U.S. 17 (1997)....................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56......................................................................................................7

████████████████████

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| Ex. 1 | U.S. Patent No. 8,014,284 ("'284 Patent") |
| Ex. 2 | U.S. Patent No. 8,559,312 ("'312 Patent") |
| Ex. 3 | U.S. Patent No. 9,392,638 ("'638 Patent") |
| Ex. 4 | Expert Report of Dr. Edwin A. Hernandez-Mondragon Regarding Infringement ("Hernandez Infr. Rpt.") |
| Ex. 5 | Deposition of Dr. Hernandez-Mondragon ("Hernandez Dep.") |
| Ex. 6 | Rebuttal Report of Dr. Wicker ("Wicker Reb. Rpt.") |
| Ex. 7 | Deposition of Kyle Allen (Sprint 30(b)(6) Witness) ("Allen Dep.") |
| Ex. 8 | Supplemental Report of Dr. Hernandez Regarding Infringement ("Hernandez Suppl. Rpt.") |
| Ex. 9 | Prosecution History - '284 Patent ("'284 Pros. Hist.") |
| Ex. 10 | SPRINTBARKAN02017547 |
| Ex. 11 | SPRINTBARKAN13283018 |
| Ex. 12 | SPRINTBARKAN13192182 |
| Ex. 13 | SPRINTBARKAN13515404 |
| Ex. 14 | SPRINTBARKAN03028411 |
| Ex. 15 | SPRINTBARKAN03025815 |
| Ex. 16 | Kyle Allen Deposition Errata |
| Ex. 17 | E-Mail Correspondence |

███████████████████████████

Plaintiff Barkan Wireless IP Holdings, L.P. ("Barkan") has no evidence that the accused femtocell products infringe the "Coordination Center" Claims[1] or the "Tamper-Free" Claims.[2] Summary judgment of noninfringement as to these claims should be granted.[3]

## I.     STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

1.     Whether Barkan has failed to establish infringement of the "Coordination Center" Claims for the accused femtocell products as a matter of law.

2.     Whether Barkan has failed to establish infringement of the "Tamper-Free" Claims for the accused femtocell products as a matter of law.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

1.     All asserted claims from the '284 Patent require a device configured to regulate data flow "based, at least partially, on information received over the data network from a coordination center." See Ex. 1, Claims 1-3 (all independent claims).

2.     Claims 2, 4-21, and 23-55 of the '312 Patent require a gateway that is adapted to communicate with a "coordination center." *See* Ex. 2, Claims 2, 4, 8.

3.     The Court construed "coordination center" to mean "center that does not participate in the actual call routing but that provides information required for making a call and that determines and disseminates a price policy." Dkt. 144 at 29.

4.     Barkan's expert, Dr. Hernandez-Mondragon, contends that the "coordination center" limitation is met by the accused Airave 4 product for CDMA network traffic by the

---

[1] "Coordination Center" Claims refers to the asserted claims that contain the term "coordination center": all asserted claims of U.S. Patent No. 8,014,284 (the "'284 Patent") and claims 2, 4-21, and 23-55 of U.S. Patent No. 8,559,312 (the "'312 Patent").

[2] "Tamper-Free" Claims refers to the asserted claims that contain either the term "tamper-free hardware" or "tamper-free unit": claim 13 of the '312 Patent and claims 1-4, 7-12, 15, 16, 18, 19, 28, and 29 of U.S. Patent No. 9,392,638 (the "'638 Patent").

[3] Claims 1, 3, and 22 from the '312 Patent and claims 17, 20-22, 25-27, 30-32, and 35-36 from the '638 Patent are not subject to the present motion.



combination of the ███████████ ████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 132-133, 136-139, 144-153; Ex. 5

(Hernandez Dep.) at 173:14-174:4, 209:1-24, 210:8-22.

5.       Barkan's expert, Dr. Hernandez-Mondragon, contends that the "coordination

center" limitation is met by the accused Airave 4 product for LTE network traffic by the

combination of the ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 125, 128-130, 132, 140-

147; Ex. 5 (Hernandez Dep.) at 173:14-174:4, 210:23-211:12, 239:24-240:11.

6.       Barkan's expert, Dr. Hernandez-Mondragon, contends that the "coordination

center" limitation is met by the accused Magic Box Gen 2a[5] and Magic Box Gold products by the

combination of the ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████████. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 125, 128-

130, 140-147, 154 (adopting Airave 4 opinions for Magic Box), 156-158; Ex. 5 (Hernandez Dep.)

at 173:14-174:4, 210:23-211:12, 239:24-240:11, 249:17-250:5, 252:11-253:21.

7.       Barkan's expert, Dr. Hernandez-Mondragon, contends that the "coordination

center" limitation is met by the accused Pebble product by the combination of the ███████

█████████████████████████████████████████████████████████████████████

████████. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 161-168; Ex. 5 (Hernandez Dep.) at 254:14-258:16.

---

[4] The ████████████ is also referred to as "██████" or "██."
[5] Barkan's untimely infringement allegations as to the Magic Box Gen 2a product are the subject of Sprint's contemporaneously filed Motion to Strike Untimely Infringement Allegations.

8.      At least the following components identified by Barkan's expert, Dr. Hernandez-Mondragon, as part of the claimed "coordination center"[6] participate in the actual call routing:



---

[6] The convoluted and vague nature of Dr. Hernandez's infringement allegations are the subject of Sprint's contemporaneously filed Motion to Strike Unsupported Opinions of Dr. Hernandez.



9.      Barkan and its expert, Dr. Hernandez-Mondragon, identify the █████████████ as a component that allegedly determines and disseminates a price policy by way of generating a ████████████████. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶ 138.

10.     ████████████████████████████████████████████ and does not contain any "price" or "price policy" information. *See* Ex. 5 (Hernandez Dep.) at 188:24-192:3 (████████████████████████████████████████████ "); Ex. 6 (Wicker Reb. Rpt.), ¶ 90.

11.     Barkan and its expert, Dr. Hernandez-Mondragon, identify the ████ as a component that allegedly determines and disseminates a price policy by way of ████████ ████████████████████████ *See* Ex. 4 (Hernandez Infr. Rpt.), ¶ 143; *see also id.*, ¶ 158, 162.

12.     ████████████████████████████████████ ████████████████████████████████████████ ████████████████ and do not contain any "price" or "price policy" information. *See* Ex. 5 (Hernandez Dep.) at 220:17-221:8, 256:23-257:16; Ex. 6 (Wicker Reb. Rpt.), ¶ 92 ████ ████████████████████████████████████



(citing Ex. 1 ('284 Patent) at 6:21-25, 7:56-64)).

13.     Barkan and its expert, Dr. Hernandez-Mondragon, identify the

as components that allegedly determine and disseminate a price policy by way of sending a

. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶ 144, 154, 156, 163, 165; Ex. 5 (Hernandez Dep.) at 242:2-243:7.

14.

does not contain any "price" or "price policy" information. *See* Ex. 5 (Hernandez Dep.) at 243:8-13 (

"); *id.* at 243:14-244:10 (

); Ex. 6 (Wicker Reb. Rept.), ¶ 93

; Ex. 7 (Allen Dep.) at 238:15-246:21 (

).

15.     At least the following components omitted from Barkan's identification of a "coordination center" participate in call routing:

-



16.     Claim 13 of the '312 Patent and claims 1-4, 7-12, 15, 16, 18, 19, 28, and 29 of the

'638 Patent[8] require that the claimed "gateway" or "add-on base station" include "tamper-free

hardware" or a "tamper-free unit." *See* Exs. 2, 3.

17.     The Court construed "tamper-free [hardware/unit]" to mean "[hardware/unit] that

includes means to destroy its contents or delete information stored therein, if someone tries to

tamper with it." Dkt. 144 at 39-40.

---

[7] Despite other statements to the contrary, Dr. Hernandez-Mondragon testified here that the ████
████████████ are not part of the coordination center. Dr. Hernandez-Mondragon's convoluted
and inconsistent testimony on the "coordination center" is the subject of Sprint's
contemporaneously filed Motion to Strike Unsupported Opinions of Dr. Hernandez.
[8] The "tamper-free" term also appears in other claims of the '638 Patent, but those claims are not
asserted.

18.     Barkan's expert, Dr. Hernandez-Mondragon, does not opine that any of the accused femtocell products satisfy the Court's construction for "tamper-free [hardware/unit]," nor does he cite to any evidence that any accused product can "destroy its contents or delete information stored therein, if someone tries to tamper with it," as required. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 311-316, 483-489, 534, 560-561, 584-585.

## III.   LEGAL STANDARD

"Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Toshiba Corp., v. Imation Corp.*, 681 F.3d 1358, 1361 (Fed. Cir. 2012); Fed. R. Civ. P. 56. Summary judgment is warranted if the non-movant bears the burden of proof yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a claim limitation is missing in an accused device, the Court must grant summary judgment of noninfringement. *See Cummins-Allison Corp. v. Glory, Ltd.*, No. 2:03-CV-358-TJW, 2005 WL 3408029, at *2 (E.D. Tex. Dec. 12, 2005) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353-54 (Fed. Cir. 1998)).

## IV.   ARGUMENT

As a matter of law, the accused products do not satisfy the "Coordination Center" Claims or the "Tamper-Free" Claims, and Barkan has no evidence to the contrary. Accordingly, summary judgment of noninfringement should be entered for these claims.

### A.   "Coordination Center" Claims

Barkan and its technical expert, Dr. Hernandez-Mondragon, are grasping at straws to find anything in Sprint's core network to identify as the claimed "coordination center." Under the Court's construction for this term, the "coordination center" (1) cannot participate in the actual call routing, (2) must provide information required for making a call, and (3) must determine and

disseminate a price policy.   SUMF, ¶ 3. Depending on the accused product, Barkan's expert attempts to cobble together as many as twelve (12) disparate network elements in order to satisfy the claimed "coordination center." *See* SUMF, ¶ 5. Barkan's selective box-drawing exercise fails in every circumstance. Aside from improperly omitting intermediate network components between those Barkan calls the "coordination center," *see* SUMF, ¶ 15, the network elements included by Barkan in its various "boxes" as the accused "coordination center" participate in the actual call routing, have no involvement in determining and disseminating a price policy, and/or do not provide information required for making a call. *See* SUMF, ¶ 4-14. Furthermore, Barkan fails to identify anything that constitutes a "price policy" as that term is described in the asserted patents, and nothing Barkan identifies as a "price policy" is ever disseminated to any of the accused femtocell products. *See* SUMF, ¶¶ 9-14.

Barkan and its expert, Dr. Hernandez-Mondragon, have not presented and cannot present any evidence of the existence of a "center that does not participate in the actual call routing but that provides information required for making a call and that determines and disseminates a price policy," as required by the Court's construction. SUMF, ¶ 3. As demonstrated below, summary judgment of noninfringement is appropriate for four distinct reasons. *Cummins*, 2005 WL 3408029, at *2 ("When a claim limitation is not present in an accused device, literally or under the doctrine of equivalents, the Court must grant summary judgment of [non]infringement") (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353-54 (Fed. Cir. 1998) and *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n. 8 (1997)).[9]

---

[9] Here, Barkan does not assert any theory of infringement under the doctrine of equivalents.

### i.    Barkan's Alleged "Coordination Center" Is Not a Contiguous "Center"

While Sprint does not contend that the "coordination center" must be a single component, Barkan's strained attempt to identify a combination of components in Sprint's core network that satisfy the construction of "coordination center" results in a piece-meal identification of disparate components, while omitting other components along the communication path. *See* SUMF, ¶ 15. Barkan and its expert, Dr. Hernandez-Mondragon, vaguely identify numerous potential combinations of distinct components—in some cases as many as twelve—as the alleged "coordination center." *See* SUMF, ¶¶ 4-7. The "Coordination Center" Claims make clear that the claimed gateway must communicate with the coordination center. SUMF, ¶¶ 1-2. As explained below, the components identified by Barkan as the "coordination center" are, in some instances, not directly connected, but rather connected through other components in Sprint's core network and, in other instances, not connected at all. Barkan cannot simply ignore the existence of these intermediate components—components that are necessarily involved in communications between the Accused Products and the components identified by Barkan as the "coordination center." Put another way, Barkan cannot arbitrarily ignore components through which communications flow when the claimed "gateway" communicates with components Barkan identifies as the "coordination center." Yet that is precisely what Barkan has done. *See* SUMF, ¶ 15. The reason for Barkan's omissions is simple: many omitted components are involved in call routing—a feature prohibited by the Court's construction of "coordination center." *See* SUMF, ¶ 3.

███████████████████████████████████████████

### a.    Airave 4

Barkan alleges that different components comprise the claimed "coordination center" for the CDMA[10] and LTE portions of the Airave 4 product.

### 1)    CDMA

For the CDMA portion of Airave 4, Barkan's expert, Dr. Hernandez-Mondragon, opines that the "coordination center" consists of at least the ███████████████████████████ ████████████████████████████████████████████████ ██████████████ ██████████████████████. SUMF, ¶ 4. As demonstrated in the diagram below,[12] depicting Sprint's network architecture for the Airave 4 product,[13] Barkan selectively omits numerous components (annotated in red) located along the communication path between the Airave 4 (annotated in blue) and the components identified as the alleged "coordination center" (annotated in green).[14] Many of the components omitted by Barkan participate in the actual call routing. *See* SUMF, ¶ 15.

---

[10] While Dr. Hernandez indicated in his deposition that he did not opine on infringement for the CDMA portion of Airave 4, Barkan's infringement contentions and Dr. Hernandez's own Opening Report indicate otherwise. *Compare* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 134, 136-139 *with* Ex. 5 (Hernandez Dep.) at 218:16 – 219:1 (with respect to Airave 4: ███████████████████████ ████████████████████████████████████████████. Thus, Sprint addresses the CDMA portion of Airave 4.

[11] The ██████████████ is referred to by several acronyms, including "██████" and "███" (as is the case in the Airave 4 architecture diagram).

[12] *See* Ex. 10 (SPRINTBARKAN02017547) (Airave 4 Design Document) at 7609.

[13] While Dr. Hernandez's opinions are at times based on inapplicable architecture diagrams for products that are not accused of infringement in this case, as discussed in Sprint's contemporaneously filed Motion to Strike Unsupported Opinions of Dr. Hernandez, Sprint's analysis is based on the correct diagrams—*i.e.*, the diagrams contained in the design documents for the respective Accused Products.

[14] This Airave 4 architecture diagram does not explicitly identify the ██████████████████ " and "██████████, components also identified by Dr. Hernandez-Mondragon as part of the "coordination center." *See* SUMF, ¶ 4. The ██████████████████████ identified by Dr. Hernandez-Mondragon is contained with the ████████████ block.



### 2)    LTE

For the LTE portion of Airave 4, Barkan's expert, Dr. Hernandez-Mondragon, opines that

the "coordination center" consists of at least the ████████████████████████████

████████████████████████████████████████ ███████████████

████████████████████████████████. SUMF, ¶ 5. As demonstrated in

the diagram below,[16] Barkan selectively omits numerous components (annotated in red) located

along the communication path between the Airave 4 (annotated in blue) and the components

---

[15] The ████████████████████ are referred to by several acronyms, including "████" and
"████" (as is the case in the Airave 4 architecture diagram).
[16] *See* Ex. 10 (SPRINTBARKAN02017547) (Airave 4 Design Document) at 7609.

identified as the alleged "coordination center" (annotated in green).[17] Many of the components omitted by Barkan participate in the actual call routing. *See* SUMF, ¶ 15.



### b.    Magic Box

Barkan's expert, Dr. Hernandez-Mondragon, opines that the claimed "coordination center" for the Magic Box products consists of at least the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SUMF, ¶ 6.

As demonstrated in the diagram below,[18] Dr. Hernandez-Mondragon selectively omits numerous

---

[17] This Airave 4 architecture diagram does not explicitly identify the PCRF or the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮" and ▮▮▮▮▮▮▮▮▮▮▮, components also identified by Dr. Hernandez-Mondragon as part of the "coordination center." *See* SUMF, ¶ 5.

[18] *See* Ex. 11 ( SPRINTBARKAN13283018) (Magic Box Gold Design Document) at 3031.



components (annotated in red) located along the communication path between the Magic Box Gold (annotated in blue) and the components identified as the alleged "coordination center" (annotated in green).[19] Many of the components omitted by Dr. Hernandez-Mondragon participate in the actual call routing. *See* SUMF, ¶ 15.

   **c.   Pebble**

   Barkan's expert, Dr. Hernandez-Mondragon, opines that the claimed "coordination center" for the Pebble products consists of at least the ████████████████████████████ ████████████████████████████████████████████

---

[19] This Magic Box architecture diagram does not explicitly identify ███████████████" and ████████████████████████████████, components identified by Dr. Hernandez-Mondragon as part of the "coordination center." *See* SUMF, ¶ 6.

███████████ SUMF, ¶ 7. As demonstrated in the diagram below,[20] Dr. Hernandez-Mondragon selectively omits numerous components (annotated in red) located along the communication path between the Pebble (annotated in blue) and the components identified as the alleged "coordination center" (annotated in green).[21] Many of the components omitted by Dr. Hernandez-Mondragon participate in the actual call routing. *See* SUMF, ¶ 15



### ii.    The Alleged "Coordination Center" Participates in Call Routing

### a.    Airave 4

#### 1)    CDMA

The components identified for the CDMA portion of Airave 4 by Barkan's expert, Dr. Hernandez-Mondragon, cannot constitute the claimed "coordination center" because, among other things, they "participate in the actual call routing," in direct contradiction to the Court's construction. SUMF, ¶¶ 3-4. At least the following components "participate in the actual call routing": ███████████████████████. *See* SUMF, ¶ 8. Because Barkan

---

[20] *See* Ex. 15 (SPRINTBARKAN03025815) (Pebble Design Document) at 5888.
[21] This Pebble architecture diagram does not explicitly identify a ████████████████ █████ a component also identified by Dr. Hernandez-Mondragon as part of the "coordination center." *See* SUMF, ¶ 7.

█████████████████████████████████████████

relies on these components to satisfy portions of the Court's construction of "coordination center," Barkan cannot demonstrate infringement as a matter of law.

### 2) LTE

At least the following components identified by Barkan's expert, Dr. Hernandez-Mondragon, for the LTE portion of Airave 4 "participate in the actual call routing," in direct contradiction to the Court's construction: ████████████████████████████████ *See* SUMF, ¶¶ 3, 5, 8. Thus, these components cannot be part of the claimed "coordination center." *See* SUMF, ¶ 3. Because Barkan relies on these components to satisfy portions of the Court's construction of "coordination center," Barkan cannot demonstrate infringement as a matter of law.

### b.    Magic Box

At least the following components identified by Barkan's expert, Dr. Hernandez-Mondragon, for the Magic Box "participate in the actual call routing," in direct contradiction to the Court's construction: ██████████████████. SUMF, ¶¶ 3, 6, 8. As such, these components cannot be part of the claimed "coordination center." *See* SUMF, ¶ 3. Because Barkan relies on these components to satisfy portions of the Court's construction of "coordination center," Barkan cannot demonstrate infringement as a matter of law.

### c.    Pebble

At least the following components identified by Barkan's expert, Dr. Hernandez-Mondragon, for the Pebble "participate in the actual call routing," in direct contradiction to the Court's construction: ████████████████. *See* SUMF, ¶¶ 3, 7-8. As such, these components cannot be part of the claimed "coordination center." *See* SUMF, ¶ 3. Because Barkan relies on these components to satisfy portions of the Court's construction of "coordination center," Barkan cannot demonstrate infringement as a matter of law.

███████████████████████████████████████████████████

### iii.   The Alleged "Coordination Center" Does Not Determine and Disseminate a Price Policy

Unable to identify anything in the alleged "coordination center" that "determines and disseminates a price policy," as required by the Court's construction, Barkan and its expert, Dr. Hernandez-Mondragon instead identify various components in Sprint's core network that allegedly communicate ██████████████████████████████. *See, e.g.*, Ex. 4 (Hernandez Infr. Rpt.), ¶ 137 ("██████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████"); *see also id.*, ¶¶ 156 (same for Magic Box), 162 (same for Pebble); Ex. 5 (Hernandez Dep.) at 191:5-192:3 (█████████████████████), 220:23- 221:11 (█████████████), 243:8-244:10 (█████████████████████████████ █████████████). But Barkan identifies nothing that constitutes a "price policy" as the term is properly understood in light of the specification of the asserted patents. *See* Ex. 1 ('284 Patent) at 6:22-25 ("The information regarding prices of use of the net and the additional, private base stations, is disseminated as digital documents encrypted so as to prevent tampering with."); *id.* at 7:56-58 ("The cellular center is responsible for the price policy. It determines and publishes *the cost for each operation over the network*.") (emphasis added).

### a.   Airave 4

#### 1)   CDMA

With respect to the requirement that the coordination center "determines and disseminates a price policy," Dr. Hernandez-Mondragon only identifies the ██████████████ for the CDMA portion of Airave 4. *See* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 137-139. As discussed above, the ████████████████ participates in call routing, so it cannot be a part of the claimed "coordination center." *See* SUMF, ¶¶ 3, 8. Moreover, the ██████████████ merely generates a ██████████

████████████████████████████████████████

████████████████████████████████████████, but does not contain

a "price policy" or the "price" for the call. *See* SUMF, ¶ 10. At base, Barkan fails to identify

anything for the CDMA portion of Airave 4 that allegedly "determines and disseminates a price

policy." As such, Barkan's infringement claims fail as a matter of law.

**2)**      **LTE**

For the LTE portion of Airave 4, Barkan's expert, Dr. Hernandez-Mondragon, identifies

for the requirement that the coordination center "determine and disseminate a price policy" the

████ and the ██████████, but neither satisfies this portion of the construction. *See* SUMF,

¶¶ 3, 11-14. As discussed above, the ████ participates in call routing, so it cannot be part of the

claimed "coordination center." *See* SUMF, ¶ 8. For the ██████████, Barkan and its expert,

Dr. Hernandez-Mondragon, merely identify sending to the ████████████████████████

██████ for the Airave 4 devices Sprint received into inventory at its warehouse. *See* SUMF, ¶

13. A ██████████ for devices received at Sprint's warehouse does not constitute a "price

policy" or have any relation to the "price" for an action over the network. *See* SUMF, ¶ 14. Barkan

therefore fails to identify anything for the LTE portion of Airave 4 that does not participate in call

routing and allegedly "determines and disseminates a price policy." As such, Barkan's

infringement claims fail as a matter of law.

**b.**      **Magic Box and Pebble**

Barkan's expert, Dr. Hernandez-Mondragon, identifies the same components for Magic

Box and for Pebble as he does for Airave 4 with respect to the requirement that the coordination

center "determine and disseminate a price policy": ████████████████████ *See* SUMF,

¶¶ 6-7; Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 154 (adopting Airave 4 opinions for Magic Box), 156, 158,

162-163, 165. For the same reasons as above, neither satisfies this portion of the construction. *See*

17

███████████████████████████████████████

SUMF, ¶¶ 3, 11-14. Thus, Barkan fails to identify anything for Magic Box or Pebble that does not participate in call routing and allegedly "determines and disseminates a price policy."

Dr. Hernandez-Mondragon also submitted a supplemental report, in which he opines that the ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *See* Ex. 8 (Hernandez Suppl. Rpt.), ¶ 8 (citing deposition errata for Sprint witness Kyle Allen ).[22] But Dr. Hernandez-Mondragon contends that the SPS satisfies another claim limitation—the "consideration-related policy database"—so it cannot also be part of the claimed "coordination center." *See* Ex 8 (Hernandez Suppl. Rpt.), ¶ 9 █████████████████████████ ████████████████████████████████████████████████); Dkt. 144 at 23-24 (discussing Barkan's arguments distinguishing the "coordination center" from "a *different* cellular center in the patents—the 'consideration-related policy database'") (emphasis in original). To the extent Barkan attempts to argue that the information sent from the ████ to the ████ constitutes a "price policy," Barkan is incorrect. Instead, the ████ contains a ████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████ *See* Ex. 7 (Allen Dep.) at 189:13-190:10.

Because Barkan has failed to identify anything that "determines and disseminates a price policy," as required by the Court's construction of "coordination center," SUMF, ¶ 3, Barkan's infringement claims fail as a matter of law. *Cummins*, 2005 WL 3408029, at *2.

---

[22] While the ████ is not depicted in the Pebble architecture diagram discussed above, Sprint's technical corporate representative, Kyle Allen, explained that there is a ████████████████ ████████████████████████████ *See* Ex. 16 (Kyle Allen Deposition Errata) at 2.

**iv.   Nothing Barkan Identifies as a "Price Policy" is Sent to the Accused Products**

The Court's construction of "coordination center" requires, in part, a "center that does not participate in the actual call routing but that provides information required for making a call and *that determines and disseminates a price policy*." SUMF, ¶ 3 (emphasis added). In view of the Court's construction and the repeated discussion in the patent specification of disseminating the price policy to the claimed gateway/add-on base station, a person of ordinary skill in the art would understand that the "price policy" must be disseminated to the claimed gateway. *See* Ex. 1 ('284 Patent) at 10:27-31 ("The billing policy can be written digitally by way of a digital document, with a date (and a short expiry date), signed by the cellular center. *This policy would be stored in all base stations and phones*, and they set the prices (by means of tokens) that the phones pay.") (emphasis added); *id.* at 6:21-25 ("The novel centers are also responsible for price setting, as determined by an operator there. The information regarding prices of use of the net and the additional, private base stations, is disseminated as digital documents encrypted so as to prevent tampering with."); *id.* at 7:56-58 ("The cellular center is responsible for the price policy. It determines and publishes the cost for each operation over the network. The updated information may be transferred over an Internet, or may be available to add-on base stations."); *id.* at 7:60-64 ("The information may be dispersed between units in the network. In each transaction, the parties thereto will check the date of each price list. The more updated price list will be transferred to the other party. Thus, the new price list or policy will gradually expand throughout the network."); *id.* at 10:36-40 ("The information may be dispersed between units in the network. In each transaction, the parties thereto will check the date of each price list. The more updated price list will be transferred to the other party. Thus, the new price list or policy will gradually expand throughout the network."); *id.* at 10:64-67 ("A billing processor 55 computes the fee or payment the base

███████████████████████████████████

station owner is entitled to, according to the amount of traffic on the channels 51, 52, and the method or policy as set in the billing document."); *see also* Ex. 9 ('284 Pros. Hist.) at 6 (differentiating prior art by stating: "Our disclosure teaches that *the billing policy is then disseminated between the entities in the system, such that a handset can automatically pay the base stations that serve it* (the payment can be made for example by using digital tokens).") (emphasis added); *see also* Ex. 6 (Wicker Reb. Rpt.), ¶ 84.

Dr. Hernandez-Mondragon identifies three different components that each allegedly "determine[] and disseminate[] a price policy": ████████████████████████████████ ██████. *See* SUMF, ¶¶ 9, 11, 13. Even if the components Dr. Hernandez-Mondragon identifies did determine a "price policy"—which they do not for the reasons discussed above—the alleged "price policy" is never disseminated to the accused femtocell products. Dr. Hernandez-Mondragon does not contend that any of these components "determines and disseminates a price policy" *to the accused femtocell products. See generally* Ex. 4 (Hernandez Infr. Rpt.), ¶¶ 121-167. To the extent Barkan points to the ███████████████████████████████████████████████ ████████████████████████████████████████████, this information does not constitute a "price policy" for the reasons discussed above, nor is that information sent to the accused femtocell products. *See* SUMF, ¶ 14.

### B.    "Tamper-Free" Claims

Summary judgment of noninfringement is appropriate as to claim 13 of the 312 Patent and claims 1-4, 7-12, 15, 16, 18, 19, 28, and 29 of the 638 Patent because the accused femtocell products do not have "tamper-free hardware" or a "tamper-free unit." *Cummins-Allison*, 2005 WL 3408029, at *2 ("When a claim limitation is not present in an accused device, literally or under the doctrine of equivalents, the Court must grant summary judgment of [non]infringement"); *Bai*, 160 F.3d at 1353-54 (Fed. Cir. 1998). Barkan's expert, Dr. Hernandez-Mondragon,  does not opine

that any of the accused femtocell products include the claimed "tamper-free [hardware/unit]" under the Court's construction. SUMF ¶ 18. Nor has Barkan identified any other evidence potentially supporting such a claim.[23] Summary judgement of noninfringement of the claims containing the "tamper-free" limitations is therefore appropriate. *Traxcell Techs., LLC v. Nokia Sols. & Ntwks OY*, No. 2:17-CV-44-RWS-RSP, 2019 WL 6723844, at * 1 (E.D. Tex. Dec. 11, 2019) (quoting *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999)) (Plaintiff "must supply sufficient evidence to prove that the accused product or process contains...every limitation of the properly construed claim.").

## V.    CONCLUSION

Because Barkan (i) fails to identify any combination of components that allegedly form a contiguous "coordination center"; (ii) identifies components that participate in the actual call routing as the "coordination center"; (iii) fails to identify any combination of components that allegedly determines and disseminates a price policy; and (iv) fails to identify any "price policy" that is disseminated to the accused femtocell devices, Sprint respectfully requests summary judgment of noninfringement as to all accused products for the "Coordination Center" Claims. Because Barkan fails to offer any evidence that the accused products satisfy the Court's construction, Sprint respectfully requests summary judgment of noninfringement as to all accused products for the "Tamper-Free" Claims of the asserted patents.

---

[23] Indeed, counsel for Barkan acknowledged by e-mail that it did not intend to pursue the "Tamper-Free" Claims if the Court adopts the construction in Magistrate Judge Payne's Claim Construction Order. *See* Ex. 17; *see also* Dkt. 144 at 39-40.

Dated:  December 4, 2020

Respectfully submitted,

*/s/ Jason W. Cook*
David E. Finkelson (*pro hac vice*)
Lead Attorney
**McGuireWoods LLP**
800 East Canal Street
Richmond, VA 23219-3916
Tel:  (804) 775-1000
Fax:  (804) 698-2016
dfinkelson@mcguirewoods.com

Jason W. Cook
Texas State Bar No. 24028537
Matthew W. Cornelia
Texas State Bar No. 24097534
**McGuireWoods LLP**
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel:  (214) 932-6400
Fax:  (214) 932-6499
jcook@mcguirewoods.com
mcornelia@mcguirewoods.com

Meghan M. Rachford (*pro hac vice*)
**McGuireWoods LLP**
Promenade
1230 Peachtree Street, N.E., Suite 2100
Atlanta, GA 30309
Tel:  (404) 443-5500
Fax:  (404) 443-5599
mrachford@mcguirewoods.com

Robert W. Weber
Texas State Bar No. 21044800
**SMITH WEBER, L.L.P.**
5505 Plaza Drive
PO Box 6167
Texarkana, Texas 75503
Tel: (903) 223-5656
Fax: (903) 223-5652
bweber@smithweber.com

*Counsel for Defendants Sprint Communications*
*Company L.P., Sprint Solutions, Inc., and Sprint*
*Spectrum L.P.*

22

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL
## PURSUANT TO LOCAL RULE CV-5(a)(7)

I hereby certify that Sprint is authorized to file the foregoing document and related

exhibits under seal by the Court pursuant to Paragraph 16 of the Protective Order entered by the

Court on May 21, 2020, as they contain DESIGNATED MATERIAL.

 */s/ Jason W. Cook*
Jason W. Cook


## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5, the undersigned certifies that the foregoing document was

served upon counsel of record for Plaintiff via e-mail on December 4, 2020.

 */s/ Jason W. Cook*
Jason W. Cook