**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **BARKAN WIRELESS IP HOLDINGS, L.P.,** <br><br>                             **Plaintiff,** <br>    **v.** <br><br> **SPRINT COMMUNICATIONS CO., L.P., SPRINT SOLUTIONS, INC., and SPRINT SPECTRUM L.P.,** <br>                        **Defendants.** | **Civil Action No. 2:19-cv-00336-JRG** <br><br> **JURY TRIAL DEMANDED** |

**BARKAN'S RESPONSE TO SPRINT'S MSJ OF NONINFRINGEMENT OF**
**"COORDINATION CENTER" CLAIMS**

# Table of Contents

I.     INTRODUCTION ................................................................................................ 1

II.    RESPONSE TO SPRINT'S STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ................................................................................................. 2

III.   RESPONSE TO SPRINT'S STATEMENT OF UNDISPUTED MATERIAL FACTS ...................... 2

IV.   LEGAL STANDARD ......................................................................................... 6

V.    ANALYSIS ...................................................................................................... 7

     **A.**   Sprint Improperly Seeks to Add Nonexistent Limitations to the "Coordination Center" Claims ................................................................................................. 7

         1.     The Claims Do Not Include a Contiguity Requirement ..................................... 7

         2.     The Claims Do Not Require the Price Policy to be Sent to the Claimed Gateway ................................................................................................ 10

     **B.**   Sprint Seeks Court Determination of Disputed Fact Questions ................................ 12

         1.     Question of Fact #1: Whether Barkan's Identified "Coordination Center" Participates in "Actual Call Routing" ........................................................ 12

████   ████████████████████████████████████
████   ████████████████████████████████████
████   ████████████████████████████████████
████   ████████████████████████████████████
████   ████████████████████████████████████

         2.     Question of Fact #2: Whether the Coordination Centers Determine and Disseminate Price Policies. .................................................................... 16

            a.    Airave 4 and Magic Box ...................................................................... 17

            b.    Pebble ............................................................................................ 18

         3.     This Court Need Not Address the "Tamper-Free Claims." .............................. 19

VI.   CONCLUSION ................................................................................................ 19

# Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................... 6

*Atmel Corp. v. Information Storage Devices, Inc.*,
997 F. Supp. 1210 (N.D. Cal. 1998) ...................................................................... 9, 17

*Brand Servs., L.L.C. v. Irex Corp.*,
909 F.3d 151 (5th Cir. 2018) ................................................................................... 7

*Fujifilm Corp. v. Motorola Mobility LLC*,
2015 WL 757575 (N.D. Cal. Feb. 20, 2015) .......................................................... 10

*Reingold v. Swiftships, Inc.*,
126 F.3d 645 (5th Cir. 1997) ................................................................................... 7

*T-Rex Prop. AB v. Regal Entm't Grp.*,
2019 U.S. Dist. LEXIS 187460 (E.D. Tex. Oct. 29, 2019) ................................. 6, 11

*United States Automobile Assoc. v. Wells Fargo Bank, N.A.*,
414 F. Supp. 3d 947 (E.D. Tex. Oct. 28, 2019) ...................................................... 7

# Exhibit List[1]

| Exhibit | Document |
|---------|----------|
| A | Excerpts from Dr. Edwin Hernandez-Mondragon Deposition Transcript dated November 23, 2020 |
| B | Email communication from Jason Cook dated October 30, 2020 |
| C | First Supplemental Expert Report of Dr. Edwin A. Hernandez-Mondragon regarding Infringement dated November 18, 2020 |
| D | Definition for "distributed network" from Microsoft Press Computer Dictionary Third Edition (1997) |
| E | ███████████████ |
| F | ███████████████ |

---

[1] The Lettered Exhibits cited herein refer to the exhibits attached to the declaration of R. Allan Bullwinkel filed with this Response. The Numbered Exhibits refer to exhibits filed with Sprint's Motion.

## I.   INTRODUCTION

Sprint seeks summary judgment of non-infringement as to all Accused Products in this case for claims including the term "coordination center," which appears in every asserted claim of the '284 Patent, and all but three asserted claims in the '312 Patent. At a high level, Sprint's motion makes two misguided arguments: (1) that this Court should add new limitations that it never imposed during claim construction to the term "coordination center"; and (2) that this Court should resolve the evidentiary disputes about how Sprint's "coordination centers" function in Sprint's favor and against the non-movant, Barkan. Sprint's motion should be denied.

First, Sprint's arguments that "coordination centers" really means "**contiguous** coordination centers **without any intervening network elements**" and that the "coordination center" must "determine and disseminate a price policy **to the claimed gateway [femtocell]**" are meritless. Sprint never urged either construction, and having failed to urge those constructions during the *Markman* process, cannot advance them now. Moreover, nothing in the specification of the Patents-in-Suit supports Sprint's constructions. To the contrary, the Patents say the ***opposite***— that coordination centers can be "distributed" throughout a "network" and that the dissemination of a price policy need not be to the claimed add-on base stations.

Second, the remainder of Sprint's motion turns the summary-judgment standard on its head, asking the Court to accept its expert's understanding of the evidence, and resolve evidentiary disputes against Barkan. Sprint contends that certain servers participate in call routing because its expert says so, but there is at least a factual dispute on this point. Similarly, Sprint contends that the servers Barkan and its technical expert have identified do not determine and disseminate a price policy because Sprint's technical expert says they do not. Again, there is a factual dispute on this point. Such factual disputes preclude summary judgment.

Sprint's motion for summary judgment of non-infringement on the coordination center claims should be denied.

## II.   RESPONSE TO SPRINT'S STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT[2]

Whether disputed issues of material fact exist regarding Barkan's infringement allegations that Sprint's network includes one or more "coordination centers."

## III.   RESPONSE TO SPRINT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Statement 1: Barkan disputes Sprint's characterization of the '284 Patent claims as requiring "a **device** configured to regulate data flow." Claims 1 and 2 require a "***controller*** adapted to regulate data flow between the mobile device and the data network based, at least partially, on information received over the data network from a coordination center." Ex. 1, Claim 1-2. Claim 3 requires "regulating data flow ***between the mobile device and the packet based data network*** based, at least partially, on ***information received over the data network from a coordination center***." *Id.* at Claim 3.

Statement 2: Barkan disputes Sprint's characterization of the claims of the '312 Patent as requiring "a gateway that is adapted to communicate with a coordination center." Claim 2 of the '312 Patent requires that "said gateway is further adapted to report its physical location to a coordination center via the packet based data network." Ex. 2, Claim 2. Claims 4 and 8 of the '312 Patent both require "a coordination center adapted to communicated with said gateway via the packet based data network." *Id.*, Claims 4, 8. Claim 14 of the '312 Patent requires that "the gateway is further adapted to: obtain, from a coordination center accessed via the packet-based data network, gateway address information for a remote gateway . . . ." *Id.*, Claim 14. The remaining asserted claims of the '312 Patent depend from these claims.

Statement 3: Barkan agrees that the Court construed "coordination center."

Statement 4: Barkan disputes Sprint's characterization of Dr. Hernandez's report and testimony regarding Airave 4 CDMA. He explained in his report that "███████████████████

---

[2] Sprint also urges summary judgment on the claim in the '312 Patent that includes the term "tamper-free" and all claims including the term "tamper-free" in the '638 Patent. The Court need not resolve that portion of the motion because the parties are negotiating a stipulation of non-infringement on that term.

██████████████████████████████████████

████████████████ Ex. 4 ¶ 146. This does not include the ███████████████████

enables communication between the Airave 4 and coordination center components. *See* Ex. A at

205:10-13 ████████████████████████████████████████████

██████████████ *id.* at 205:20-206:8 ("█████████████████████████

███████████████████████████████████████████

██████████████████████ (emphasis added)). Dr. Hernandez's testimony regarded the fact that

the identified coordination center elements interact with other components within Sprint's network

as well, including the ███████████████████████████████████████

██████████████████

Statement 5: Barkan disputes Sprint's characterization of Dr. Hernandez's report and testimony regarding Airave 4 LTE. As discussed above regarding Statement 4, Dr. Hernandez identified a number of components (listed above, citing Ex. 4 ¶ 146) as part of the coordination center for the Airave 4. He does not identify the ████████████████ component.

Statement 6: Barkan disputes Sprint's characterization of Dr Hernandez's report and testimony regarding the Magic Box products. First, as detailed in his report, the analysis regarding the LTE portion of the Airave 4 applies equally to the Magic Box products. *See* Ex. 4 ¶ 154 ████

████████████████████████████████████████████

███████████████████████████████████ Thus, the discussion above and evidence cited regarding statement 5 applies here also. As with the ████████████ Dr. Hernandez did not identify the ████████████ as part of the coordination center. He referenced the ████████████ when describing how the Magic Box devices interface with the ████████ component. *See* Ex. 4 ¶ 156 (page 59) ████████████████████████████████████████████

██████████████████████████████ (emphasis added)).

Statement 7: Barkan disputes Sprint's characterization of Dr. Hernandez's report and testimony regarding the Pebble. He did not identify the ████████████████ as part of the

3

coordination center. *See* Ex. 4 ¶ 165 ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ Ex. A at 256:7-13 (explaining that the ████████████

██████ to permit network access for certain Pebble devices).

Statement 8: As detailed further below, Barkan disputes Sprint's characterization of the

components listed ████████████████████████████████████████████████

███████████████ First, Barkan does not agree that Dr. Hernandez has identified or relied upon

the ████████████████████ as components of the coordination center. The ████████

██████████ was addressed above regarding Statements 4-7; that analysis and cited evidence is

incorporated herein. Sprint cites two passages in Dr. Hernandez's report that mention ██████

In neither of those passages does he rely on the ██████████ as the claimed coordination center. In

the first cited passage (Ex. 4 ¶ 156), Dr. Hernandez cites a diagram illustrating how the Magic Box

communicates with the ██████ component. That those communications go through the ██████████

██████████ does not mean the ████████ itself is part of the claimed coordination center. The

next passage (Ex. 4 ¶ 303), similarly, explains how ████████████████████████████

███████████████████████████████████████████████████████████

███████████ Ex. 4 ¶ 303 (emphasis added). Neither of these passages state that the ██████████ is

part of the claimed coordination center.

Statement 9: Barkan agrees that the ████████████████ is identified as a component that

determines and disseminates a price policy. Barkan disputes Sprint's characterization of Dr.

Hernandez's testimony as indicating that the ***generation*** of a call data record is itself a price policy.

Rather, Dr. Hernandez explained that generation of a call data record is evidence of the existence

of a price policy. *See* Ex. A at 191:20-22 ████████████████████████████████

██████████████████████████

███████████████████████████

Statement 10: Barkan agrees that Dr. Hernandez testified that a call data record (CDR) is "evidence of the existence of a price policy." Barkan disputes Sprint's other characterizations within this paragraph regarding "price" or "price policy" information. *See* Ex. A at 191:11-15

████████████████████████████████████████

████████████████████████████████

██████████████████████ (emphases added)). Dr. Hernandez's testimony that a CDR is evidence of a price policy does not mean that a CDR "does not contain any 'price' or 'price policy' information," as Sprint alleges. Mot. at 4 ¶ 10. Contrary to Sprint's implication, price or price policy *information* is not the same as "price policy."

Statement 11: Undisputed that Dr. Hernandez identifies the ████ as a component implicated in determining and disseminating a price policy through policy control decision and flow-based charging functionalities.

Statement 12: Barkan disputes Sprint's statement that █████rules "do not contain any 'price' or 'price policy' information." Mot. at 4. Dr. Hernandez's cited testimony does not stand for this proposition. And, his report explains that the █████is a component of the coordination center that determines and distributes a price policy, which would include price policy information. Ex. 4 ¶ 143 ████████████████████████████████████████

██████████████████████ *id.* ████████████

████████████████████████████████████████

█████████████████████████████████Barkan also disagrees with the opinions put forth by Dr. Wicker regarding ██████and its relation to a price policy.

Statement 13: Barkan disputes Sprint's characterization of Dr. Hernandez's report concerning the ██████████████ Dr. Hernandez identifies the ██████████████as providing information to the ██████████████████████

██████████████*See* Ex. 4 ¶ 144 ████████████████████

████████████████████████████████████████

████████████████████████████████████████

5

████████

██████   ████████   *id.* ¶ 165  (listing ████████  ███   ████████   ████████   Sprint's

characterization improperly omits reference to these ████████████████████

Statement 14: Barkan disputes Sprint's characterization of testimony in this paragraph for

the same reasons detailed regarding the previous paragraph. Namely, Sprint discusses ████████

██████ and fails to include ████████████████ which Dr. Hernandez analyzed. Further,

Sprint continues generally alleging that certain cited evidence ████████████████ "does not

contain any 'price' or 'price policy' information." Mot. at 5 ¶ 14. But, Dr. Hernandez's

supplemental report explains (based on the corrected testimony of Sprint's corporate

representative) how the ████████████ a price policy. *See* Ex. C ¶ ████████████

████████████████████████████████████████████

████████████████████

Statement 15: Barkan agrees that the components listed are not included in its identification

of a "coordination center." For this reason, Barkan has not taken a position regarding whether these

components ████████████████████████████████████

participate in call routing.

## IV.   LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). Summary judgment is not appropriate when "a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The party

seeking summary judgment always bears the initial responsibility of informing the district court

of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." *T-Rex Prop. AB v. Regal Entm't Grp.*,

2019 U.S. Dist. LEXIS 187460, at *3-4 (E.D. Tex. Oct. 29, 2019). The moving party must

"establish beyond peradventure all of the essential elements of the claim or defense to warrant

summary judgment in its favor" where it bears the burden of proof; and where it does not bear the

6

burden of proof, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *United States Automobile Assoc. v. Wells Fargo Bank, N.A.*, 414 F. Supp. 3d 947, 951 (E.D. Tex. Oct. 28, 2019) (quotations and brackets omitted).

"On summary judgment the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 156 (5th Cir. 2018) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)).

## V.   ANALYSIS

### A.   Sprint Improperly Seeks to Add Nonexistent Limitations to the "Coordination Center" Claims

The Court construed "coordination center" as "center that does not participate in the actual call routing but that provides information required for making a call and that determines and disseminates a price policy." Dkt. No. 144 at 29; Dkt. No. 172. Sprint's motion, however, seeks to belatedly add two nonexistent limitations to the term. Sprint improperly claims that the coordination center is a "**contiguous** center **without any intervening network elements** that does not participate in the actual call routing but that provides information required for making a call and that determines and disseminates a price policy **to the claimed gateway**." The Court should summarily reject Sprint's belated attempts at claim construction, which are both untimely and inconsistent with the language of the Patents-in-Suit.

#### 1.   The Claims Do Not Include a Contiguity Requirement

Sprint first urges that summary judgment is warranted because the coordination centers Barkan identifies are not "contiguous." Sprint's argument fails because it identifies no reason why the servers making up the "coordination center" functionality identified in the Asserted Patents must be contiguous; or why Barkan must include in its infringement assertions intermediate

network elements that are not part of the "coordination center." Sprint's argument is little more than a belated attempt to add an additional limitation to the term "coordination center"—contiguity—that it never urged during claim construction, and has forfeited the right to urge now.

*First*, the fact that Sprint concedes that "coordination center" can mean multiple coordination centers—then never identifies anything in the claims or the specification that requires the centers to be "contiguous"—is all the Court needs to reject Sprint's argument. Sprint admits that nothing in the patents ever requires that the "coordination center" must be a "single component." Mot. at 9. In fact, the patents ***specifically disclose*** embodiments in which the functionality identified as the "coordination center" in the Asserted Patents is split amongst a number of different network elements; or "distributed" across a variety of different elements in the same network. *See* Ex. 1 ('284 Patent) at 6:8-9 ("[A] plurality of centers may be used."); Ex. 2 ('312 Patent) at 6:15-16 (same); *id.* at 6:61-64 ("Center **3** (or a **network of such centers**) stores information regarding the various base stations, their location and coverage, availability and connections."); *id.* at 16:33-34 ("Alternately, a **distributed center network** may be used.").[3] After conceding that the "coordination centers" in the Patents need not be a single "center," but can be a network of centers, Sprint then fails to identify a single piece of evidentiary support for the notion that all coordination centers within the claimed network must be contiguous.

*Second*, to the extent Sprint is urging that it is implicit in the Patents or the term "coordination center" that all coordination center elements must be contiguous—i.e., ***directly connected with no intervening network elements***—that position is directly contradicted by the specification. The Patents explicitly state that the coordination center functionality may not only be divided among multiple centers, but may consist of a "network" of servers, or even a "***distributed*** center network." *See, e.g.*, *Atmel Corp. v. Information Storage Devices, Inc.*, 997 F.

---

[3] That the "coordination center" functionality may be performed by the coordinated work of a number of servers is unsurprising, given the variety of different potential functions for the coordination center that are disclosed in the Patents. *See* Ex. 2 ('312 Patent) at 7:40-44 ("The duties of the cellular centers **3** include, among others: (a) Network integration and planning; (b) Implementing a price policy; (c) Network operability; and (d) Manager of phone locator.").

Supp. 1210, 1220 (N.D. Cal. 1998) ("The use of the term 'region' in the singular in the claim does not indicate that the region must be contiguous, given the contrary use of the term in the specification."). Indeed, the plain meaning of a network—particularly a distributed one—is that the servers within the network need not be contiguous, but rather, can be dispersed. *See* Ex. D (defining "distributed network" as "[a] network in which processing, storage, and other functions are handled by separate units (nodes) rather than by a single main computer."). Requiring contiguous components within a network setting is contrary to the very notion of networking, which permits physically separated (and potentially separately located) components to coordinate and interact via network communications. That such coordination and interaction may involve communication channels that flow through other network components does not change the nature of the communication; nor does it transform the intermediate components into the endpoint servers. For instance, two servers at two different locations may replicate data between each other over a network to provide redundancy in the event of a single server outage. The replication channels may pass through other network components (including gateways, routers, etc.); however, that does not make those intermediate components part of the replicated servers. Sprint's suggestion otherwise has no basis. Sprint's expert, Dr. Wicker, never mentions such a deficiency with Dr. Hernandez's opinions. Sprint's purported contiguous requirement is a product of mere attorney argument, and this is not an appropriate basis for granting summary judgment.

*Third*, Sprint's time to urge that "coordination center" actually means "a coordination center, or a network of centers—but not a network of centers where the centers are not all directly connected" has long passed. While Barkan contends that such a construction would need to be rejected for the reasons set forth above, the proper time for Sprint to add an additional limitation to the term "coordination center" was *before* this Court construed it. Now that this time has passed, Sprint cannot use an unsupported summary-judgment argument to introduce, *sub silentio*, new constructions that should have been urged at the *Markman* hearing three months ago. This Court therefore has discretion to decline to hear Sprint's argument that urges a "contiguity" limitation in the term coordination center. *See Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, at

*5 (N.D. Cal. Feb. 20, 2015) (Court "not obligated to rule" on "belated claim construction arguments" when they are "raised for the first time in summary judgment briefs.").

*Finally*, accepting Sprint's "contiguity" limitation to the "coordination center" system would yield absurd results, as it requires presuming that the servers comprising the "coordination center" would or could feasibly be connected without the use of at least some intervening elements that are not themselves part of the coordination center. Sprint does not dispute that switches, routers, and gateways are required elements to route IP traffic between multiple IP-enabled devices, including several of the coordination centers identified on Sprint's network. Yet, a significant number of the red boxes Sprint draws as comprising purportedly non-contiguous aspects of the coordination center are simply IP-based network elements, like ███████████████ that are required to even be capable of transmitting data in the first place. As the Patents-in-Suit illustrate, it will ***inevitably be the case*** that there will be unclaimed network elements between the coordination center and the claimed gateways (i.e., femtocells). *See, e.g.*, Ex. 2 ('312 Patent), at Figs. 1, 5. For example, given that the Patents disclose the use of a customer's existing Internet connection as the means of backhauling data from the gateways, it is not feasible to implement a connection between the gateway and the femtocell without the use of existing network elements, like switches, routers, and other support infrastructure; all of which Sprint states that Barkan is required to accuse as part of the "coordination center."

### 2.   The Claims Do Not Require the Price Policy to be Sent to the Claimed Gateway

Similarly, Sprint alleges that the court's construction of "coordination center" requires not only that a price policy be disseminated, but also that it be sent directly to the femtocell. *See* Mot. 19 ("Nothing Barkan Identifies as a 'Price Policy' is Sent to the Accused Products"). This too is simply a belated attempt to reconstrue the term "coordination center." Sprint never urged that a "coordination center" need not only "determine and disseminate" the price policy, but also "send that price policy to the [claimed] gateway," *i.e.*, femtocell. Nothing in the Court's construction or discussion of the term "coordination center" requires or even implies that that the "price policy"

must be sent to the femtocell or used directly by the femtocell, as opposed to being used by another device or server in the claimed system.

Sprint argues, without support, that "a person of ordinary skill in the art would understand that the 'price policy' must be disseminated to the claimed gateway." Mot. at 19. Sprint has offered zero evidentiary support for this proposition, which is grounds alone to deny Sprint's motion. *See T-Rex Prop. AB*, 2019 U.S. Dist. LEXIS 187460, at *3-4 ("The party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."). In any event, Sprint's reliance on how a POSITA would understand the court's claim construction (which was proposed by Sprint itself) necessarily implicates fact questions, and the parties' experts will need to present their contrary positions to the jury regarding whether or not a price policy includes an implicit understanding that the price policy is also sent to the femtocell.

Moreover, the evidence Sprint cites from the specification ***contradicts its position*** that the price policy is required to be disseminated to the claimed gateways. Rather, the Patents state that disseminating the price policy to the gateways is merely an option. *See, e.g.,* Ex. 1 ('284 Patent) at 7:56-58 ("The cellular center is responsible for the price policy. It ***determines and publishes*** the cost for each operation over the network. The updated information ***may be transferred over an Internet***, or ***may be available to add-on base stations***." (emphases added)). Notably, this illustrates that one embodiment describes the act of disseminating a price policy as publishing that policy, *e.g.*, making it available. This does not require that the policy be sent to the add-on base stations. Other evidence cited by Sprint also illustrates that dissemination does not require actively sending the policy to the claimed add-on base stations. *See id.* at 7:60-64 ("The information ***may be dispersed*** between units in the network. . . . Thus, the new price list or policy will ***gradually expand*** throughout the network." (emphases added)). Sprint's cited evidence illustrates that its requirement that a price policy be sent to the claimed gateways is more restrictive than the Court's

requirement that the coordination center disseminate a price policy. The Court should reject Sprint's belated attempt to add limitations to the construction of "coordination center."

      **B.**  <u>Sprint Seeks Court Determination of Disputed Fact Questions</u>

Sprint's remaining arguments request that the Court determine disputed fact questions that are the province of the jury. First, Sprint embraces an extremely broad view of what it means to participate in "actual call routing." Whether Sprint's interpretation is reasonable and whether the network elements Sprint identifies participate in actual call routing is a question for the jury. Second, Sprint seeks summary judgment based on its own understanding of what it means to determine and disseminate a price policy. Sprint's argument that a "price policy" must include a price is not supported by the Court's claim construction or the specification, and there is a dispute of material fact as to whether the claimed coordination centers determine and disseminate a price policy under the Court's construction.

      **1.**  **Question of Fact #1: Whether Barkan's Identified "Coordination Center" Participates in "Actual Call Routing"**

Sprint identifies a subset of components purportedly relied on by Dr. Hernandez as providing the coordination center of the claims, and then argues that those components participate in actual call routing. *See* Mot at 14-15. The following components are identified by Sprint for each accused product:



*Id.* As an initial matter, Dr. Hernandez did not identify some of the components above as part of the coordination center (*e.g.*, ████████████████████ Moreover, whether the remaining components participate in "actual call routing" is a material fact that is in dispute—a question for the jury.

███████████████████████████████████

**a.** ████████████████████

First, Dr. Hernandez did not identify the ███████████████████████ as part of the coordination center. For the Airave 4 and Magic Box devices, he stated: "███████████

███████████████████████████████████

███████████████████████ Ex. 4 ¶ 146. For the Pebble, he stated: ████████████████

███████████████████████████████████

███████████████████ Ex. 4 ¶ 165. He did not identify the ████████ as a part of the claimed center. The deposition testimony Sprint cites regarding the Pebble does not illustrate Dr. Hernandez identifying the ████████ as part of the coordination center either. Rather, he was simply explaining how Sprint's network operates. *See* Ex. A at 256:7-13 ████████████████████

███████████████████████

Regardless, even if Dr. Hernandez had identified the ████████████████ as part of the claimed coordination center, it does not participate in "actual call routing." ████████████ ███████████████████████████████ is simply the door to Sprint's operator network—it does not direct traffic (including calls) through Sprint's network. *See, e.g.*, Ex. 4 ¶ 132 █████████████████████████

████████  ██████  ██████  █████  ██████  ███  █

███████████████████████████████████

███████████████████████████████████

██████████████████████████ Merely being part of a "pathway" does not mean that you are performing "actual" routing, which involves providing some type of direction.

Further, Dr. Hernandez has not identified the ████████████ as part of the coordination center. Again, for the Airave 4 and Magic Box devices, Dr. Hernandez opined: "███████████

███████████████████████████████████

13

███████████

████████████████████████████████████████████

███████████ Ex. 4 ¶ 146.  Similarly, for the Pebble, Dr. Hernandez opined: "████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████ Ex. 4 ¶ 165. Dr. Hernandez's report simply mentioned the ███████as

part of his discussion of the Sprint operator network, particularly the PCRF component. *See* Ex. 4

¶ 156 ███████████████████████████████████████

█████████████████████████ (emphasis added)); Ex. 4 ¶ 163 █████

████████████████████████████████████████████

████████████████████████████████████████████

███████

**b.**   ███████████

For the Airave 4 (and Magic Box Gold), the ███████does not participate in "actual

call routing." Sprint cites portions of design documents to argue that ████████████

███████████████████ part of "actual call routing." *See* Mot. at 3, 9 (citing Exs.

10 and 11). However, Sprint takes these purported ████████out of context. In both instances,

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (emphasis added)); Ex. 11 at 3044 (referring

██████████████████████████

**c.**   ███████████████

On the ████████████████ Sprint cites to its *own* expert to show that the ██

purportedly participates in "actual call routing." *See* Mot. at 3. Sprint cannot rely on its ***own*** expert

███████████████████████████████

to show the absence of a dispute of material fact regarding Barkan's infringement claims. Dr. Hernandez's report indicates the ██████████████████████████████ *See, e.g.*, Ex. 4 ¶ 136 ██████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *id.*

¶ 137 ████████████████████████████████████████████████████

████████████████████████████████ *see also* Ex. A at 180:20-22 ████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████ Providing voice services is not the same as participating in actual call routing; neither is performing ████████████████████ Determining whether or not a given claim limitation (such as participating in actual call routing) has been met by Barkan's evidence is precisely the function of the jury. Dr. Wicker can provide his analysis, and Dr. Hernandez can provide a differing analysis. The jury will then determine whether the evidence shows that the CS participates in call routing.

       ***d.*** ████████████████████████████

    Sprint also argues that ██████████████████████████████████████████

██████████████████████████ participate in actual cellular call routing. Sprint's argument is that these ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ *See* Mot. at 3. However, as explained in Dr. Hernandez's report, █████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████ That is not the same as performing actual call routing. Further, whether actual call routing and Internet routing are the same (or even related) is a question of fact for the jury.

███████████████████████████████████

    **e.** ████

Sprint's *only* evidence that ██████████████ performs actual call routing is a reference

to ██████████████████ *See* Mot. at 4. Sprint fails to even explain what ████████████

████████ means. Given that Sprint fails even to explain the significance of ██████████████

██████████████ Sprint cannot argue that it is undisputed that the █████ participates in the

process of actual call routing. Dr. Hernandez never states or implies that the █████ function

participates in actual call routing, despite multiple paragraphs describing the PCRF function. *See*

Ex. 4 ¶¶ 140-143 (describing ██████ without any mention of routing). Barkan's and Sprint's experts

can explain the operation of the █████ to the jury, which will then determine whether the evidence

shows that the █████ satisfies the claimed coordination center.

  **2.** **Question of Fact #2: Whether the Coordination Centers Determine and Disseminate Price Policies.**

Sprint next argues that Barkan has failed to identify evidence showing the identified

coordination center determines and disseminates a price policy. This Court should reject Sprint's

arguments for two reasons.

*First*, the entirety of Sprint's argument that the coordination centers do not determine and

disseminate price policies is premised on a construction of "coordination center" that Sprint never

argued for, and which the Court never adopted during the *Markman* process. Specifically, Sprint

now contends that the coordination center need not only determine and disseminate a "price

policy" (the construction Sprint sought, which the Court adopted), but needs to also "determine[]

and publish[] the *cost for each operation over the network*." Mot. at 16 (emphasis in original).

Sprint makes no effort to explain what it means to publish the "cost for [an] operation," what

"operation" is being performed, or which network it identifies as the network over which the cost

is being published. Mot. at 16-18. Sprint's only basis for urging its post-hoc "cost for each

operation over the network" construction is a single line in the specification (Ex. 1, '284 Patent at

7:56-58), which nowhere purports to be a definition of what "price policy" means, much less an

all-encompassing one. This Court need not consider summary judgment arguments attempting to

16

██████████████████████████████████████████

retrospectively redefine terms in the patents. *See Atmel Corp. v. Information Storage Devices, Inc.*, 997 F. Supp. at 1220.

*Second*, in urging that the coordination center fails to meet the required limitation, it cites Sprint's *own* arguments and understanding of what encompasses a "price policy," not the arguments and understanding that could be adopted by the jury. *See* Mot. at 4-5. The evidence is clear that there is a dispute of material fact on whether the claimed servers determine and disseminate a price policy. Sprint's arguments presume that the jury will believe Sprint's interpretation of the evidence, which is the opposite of what the summary-judgment standard permits.

### a.   Airave 4 and Magic Box

Sprint's arguments regarding the Airave 4 and Magic Box Accused Products try to turn the summary-judgment standard on its head, urging that if the jury could agree with at least one of Sprint's arguments, that summary judgment should be granted in Sprint's favor. First, Sprint argues that the ████ cannot comprise part of the claimed coordination center. Mot. at 3-4. But Sprint does not advance any argument at all as to why the ████ does not "determine and disseminate a price policy." Sprint advances only the separate, unrelated argument (discussed *supra*) that the ████ server participates in call routing, which can be rejected for the reasons already stated. Since Barkan need only identify a single coordination center server that determines and disseminates a price policy—and since Sprint advances no argument as to why the ████ does not—summary judgment cannot be granted for that reason alone.

Regardless, Sprint's arguments regarding the ***other*** servers Barkan has identified as coordination centers in relation to the Airave 4 and Magic Box devices do not determine or disseminate a price policy likewise fail. Sprint's argument regarding the ███████████ is that the ████████████████████████████████████████████████ ███████████████████ But Sprint submits no evidence demonstrating the absence of a dispute of material fact as to whether or not such information constitutes a price policy. As a result, the jury is entitled to decide whether information used to correlate a paid up subscriber with the

17

████████████████████████████████████████████████

accused products is a "price policy." As to the ████████████████ used for the Airave 4's CDMA operation, Sprint likewise advances only attorney argument that a "call data record (CDR)" is not evidence of a price policy. *See* Mot. at 16-17.

### b. *Pebble*

Sprint again contends that the ██████ cannot comprise the claimed coordination center because it is involved in actual call routing but does not advance any argument at all as to why the ██████ does not "determine and disseminate a price policy." Because Sprint's argument that the ██████ is involved in actual call routing can be rejected and Barkan need only identify a single coordination center server that determines and disseminates a price policy, which Sprint does not contest with respect to the ██████ identification of the ██████ is alone sufficient and summary judgment cannot be granted.

Sprint also contends that information that the Pebble's ████████████████ ██████████████████████████████████████ would not constitute a "price policy." But again, Dr. Hernandez has opined that ████████████████████ ████████████████████████████████████████████████ *See* Ex. C ¶ 8 ██████████████ ████████████████████████████████████████████████ ████████████████ Moreover, Barkan is entitled to probe the accuracy of Mr. Allen's characterizations regarding the ████████████████ since the very testimony on which Sprint relies is testimony that Mr. Allen was ***forced to change*** through an errata sheet after he gave contradictory testimony at his deposition. Specifically, Mr. Allen urged a non-infringement position at his deposition in relation to the Pebble by contending that the ██████████████████████████ ██████ As Sprint's counsel disclosed after Mr. Allen's deposition, that testimony was not accurate. *See* Ex. B (email detailing Mr. Allen's errata changes).

### 3.  This Court Need Not Address the "Tamper-Free Claims."

Sprint also argues that summary judgment of non-infringement is warranted on Claim 13 of the '312 Patent and Claims 1-4, 7-12, 15, 16, 18, 19, 28, and 29 of the '638 Patent because the Accused Products do not have "tamper-free hardware" or "units" as the Court has construed the term "tamper-free." Mot. at 19-20. The Court need not resolve this issue because the parties are currently negotiating a joint stipulation of non-infringement with regard to those claims, the construction of which Barkan reserves the right to address on appeal.

## VI.  CONCLUSION

For the foregoing reasons, Sprint's motion for summary judgment on the "coordination center" claims in the '284 and '312 Patents should be denied.

DATED: December 21, 2020                    Respectfully Submitted,


                                            */s/ R. Allan Bullwinkel*
                                            Max L. Tribble, Jr. – Lead Counsel
                                            Texas State Bar No. 20213950
                                            Justin Nelson
                                            Texas State Bar No. 24034766
                                            **SUSMAN GODFREY, L.L.P.**
                                            1000 Louisiana Street, Suite 5100
                                            Houston, Texas 77002
                                            Telephone: (713) 651-9366
                                            Facsimile: (713) 654-6666
                                            mtribble@susmangodfrey.com
                                            jnelson@susmangodfrey.com

                                            Matthew R. Berry
                                            Washington State Bar No. 37364
                                            Alexander W. Aiken
                                            Washington State Bar No. 55988
                                            **SUSMAN GODFREY, L.L.P.**
                                            1201 Third Ave., Suite 3800
                                            Seattle, Washington 98101
                                            Telephone: (206) 516-3880
                                            Facsimile: (206) 516-3883
                                            mberry@susmangodfrey.com
                                            aaiken@susmangodfrey.com

                                            William D. O'Connell
                                            New York State Bar No. 5491014
                                            **SUSMAN GODFREY, L.L.P.**
                                            1301 Avenue of the Americas, 32nd Fl.
                                            New York, New York 10019-6023
                                            Telephone: (212) 336-8330
                                            Facsimile: (212) 336-8340
                                            boconnell@susmangodfrey.com

                                            S. Calvin Capshaw
                                            Texas State Bar No. 03783900
                                            Elizabeth DeRieux
                                            Texas State Bar No. 05770585
                                            **CAPSHAW DERIEUX LLP**
                                            114 E. Commerce Ave.
                                            Gladewater, TX 75647
                                            Telephone: (903) 845-5770
                                            ccapshaw@capshawlaw.com

ederieux@capshawlaw.com

Michael F. Heim
Texas State Bar No. 09380923
R. Allan Bullwinkel
Texas State Bar No. 24064327
Blaine A. Larson
Texas State Bar No. 24083360
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby St., Suite 2100
Houston, TX 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com
abullwinkel@hpcllp.com
blarson@hpcllp.com

T. John Ward, Jr.
Texas State Bar No. 00794818
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea L. Fair
Texas State Bar No.24078488
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
jw@wsfirm.com
claire@wsfirm.com

*Attorneys for Plaintiff Barkan Wireless IP Holdings, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically incompliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).

*/s/ R. Allan Bullwinkel*
R. Allan Bullwinkel

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that Barkan is authorized to file this document and related exhibits under seal pursuant to Paragraph 16 of the Protective Order and Local Rule CV-5(a)(7) because they contain confidential material.

*/s/ R. Allan Bullwinkel*
R. Allan Bullwinkel